FILED'05 NOV 23 12:39USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IVA LEE BLAYLOCK, | CV-04-6397-TC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

KATHRYN TASSINARI
BRENT WELLS
474 Willamette, Suite 200
Eugene, OR 97401

    Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
District of Oregon

Page -1- FINDINGS AND RECOMMENDATION

NEIL EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

LEISA A. WOLF
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

Attorneys for Defendant

Coffin, Magistrate Judge:

## BACKGROUND

Plaintiff, Iva Lee Blaylock (Blaylock), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). 42 U.S.C. § 1383©)(3). This court has jurisdiction under 42 U.S.C. § 405(g).

Blaylock filed for DIB on January 29, 2001, alleging disability beginning October 15, 1999, based on low-back, right upper extremity, and stress impairments. She was 56 years old at the time of the Administrative Law Judge's (ALJ's) final decision, denying benefits. She has a general equivalency education and one year of college. Her past work was as a psychiatric aide and a prison guard in a juvenile correctional facility.

On appeal to this court, Blaylock claims the ALJ erred by (1) failing to provide legally sufficient reasons to discredit her testimony; (2) failing to provide legally sufficient reasons to reject the opinion of Heather Burgin, M.D.; (3) failing to find her alleged mental impairment to

be a severe impairment; and, (4) failing to show she can perform other work in the national economy.

For the reasons that follow, the Commissioner's decision should be AFFIRMED and this action should be DISMISSED.

## STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

Page -3- FINDINGS AND RECOMMENDATION

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1512. Each step is potentially dispositive.

Here, at step one, the ALJ found Blaylock had not engaged in substantial gainful activity since her alleged disability onset date. See 20 C.F.R. § 404.1520(b).

At step two, the ALJ found that Blaylock's mechanical lumbar spine pain was a "severe" impairment, as defined by the regulations. See 20 C.F.R. § 404.1520©).

At step three, the ALJ found that Blaylock's impairments did not meet or equal the requirements of a listed impairment. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ assessed Blaylock with the residual functional capacity (RFC) to perform a modified range of light exertional work that allowed for the option of alternating between sitting and standing positions. See 20 C.F.R. §§ 404.1520(e), 404.1545.

At step four, the ALJ found that Blaylock was no longer capable of performing her past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).

At step five, however, the ALJ determined that Blaylock could perform other work existing in significant numbers in the national economy, such as in-home personal attendant and gate tender. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## DISCUSSION

I. **The ALJ properly discredited Blaylock's testimony.**

Blaylock contends the ALJ failed to give legally sufficient reasons to find her testimony less than fully credible. The ALJ is not required to credit every allegation of disabling pain or else disability benefits would be available on demand. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). However, if the ALJ determines that a claimant is not credible she must give specific reasons, supported by substantial evidence in the record, indicating that she has not arbitrarily discredited a claimant's testimony. See Thomas v. Barnhart, 278 F. 3d 947, 958-59 (9th Cir. 2002).

In assessing a claimant's credibility, the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ listed numerous reasons for discounting Blaylock's reports. First and foremost, the ALJ found that the objective medical evidence did not support the degree of disability alleged by Blaylock. With respect to her alleged low back impairment, the ALJ noted that Blaylock had only transitory to normal neurologic signs during the period under review, and

that after undergoing a laminectomy and fusion in April, 2000, she had no objective neurologic signs and was eventually released to work by Robert Buza, M.D.

Regarding fibromyalgia, the ALJ found "no serious pathology." She noted a rheumatologist report written by Kip Kemple, M.D., who evaluated Blaylock in 1994 pursuant to breast implant litigation (which was unsuccessful), and asserted that Blaylock suffered from chronic fatigue related to her silicone breast implants. Yet, despite the alleged chronic fatigue, that year Blaylock worked full time and had the highest earnings of her career. In July, 2000, Blaylock complained to Heather Burgin, M.D. of diffuse muscle discomfort, but Dr. Burgin found Blaylock did not have even a single positive trigger point consistent with fibromyalgia. Then, in April, 2001, after Blaylock filed her application for DIB, Dr. Burgin assessed 12 out of 18 positive trigger points, and made a conditional diagnosis of fibromyalgia. Yet, as the ALJ noted, on numerous examinations by Dr. Burgin and others, Blaylock had normal musculoskeletal and joint signs without synovitis or swelling, and no systemic disease was detected by laboratory panels. From the ALJ's recitation of this timeline this court infers that the ALJ determined Blaylock's complaints of fatigue were motivated by financial gain, and were therefore not reliable. See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989)(the court may draw specific and legitimate inferences from the ALJ's opinion).

With respect to Blaylock's alleged mental impairment, the ALJ determined that the medical evidence showed the Blaylock had mild symptoms brought about by a stressful work situation, which promptly resolved through therapy and medication. This finding is discussed in more detail below.

The second reason the ALJ gave for discrediting Blaylock was that there were numerous contradictions in her testimony. She asserted a disability onset date of October, 1999, yet she didn't quit her job until November 24, 1999. Prior to quitting Blaylock made numerous references to her "retirement" plans. For example, on September 10, 1999, Patricia Peterson, M.D., noted "The patient is planning to travel to India for a three week vacation..," and on November 15, 1999, Dr. Burgin wrote, "She works as a guard for a correctional facility, but is looking to retire in the next several months." Moreover, at the hearing Blaylock testified that she "retired in 1999" and that she is living on "retirement." She also told the ALJ that if her long-time position as a psychiatric aide had not ended she could have continued that work. Together with the fact that her mental health issues abated shortly after quitting her last job as a security guard, these statements led the ALJ to conclude that Blaylock quit because she didn't like the job, not because she was disabled.

The ALJ also found Blaylock's activities of daily living to be inconsistent with the degree of disability she alleged. For instance, in August, 1999, just one month before her alleged disability onset, Blaylock attended "Tae Bo" exercise classes. Then, as mentioned, in November, 1999, she went on a three week vacation to India before returning and quitting her job. In December, 1999, she was taking aerobics classes at YMCA. In June, 2000, Dr. Bergin noted that Blaylock was "heavily tanned" from sun exposure. A few days later she told Dr. Buza that her back had been doing well until a bike riding accident six weeks prior. In April, 2002, after she filed for DIB, she was volunteering full-time at the Red Cross. In March, 2003, she had elective liposuction, and began taking narcotic pain medication for this reason.

The ALJ concluded that Blaylock's activities were not consistent with her contention that she is depressed and in constant, disabling back pain. She noted that apart from the period of recovery following her laminectomy and fusion in April, 2000, Blaylock's activity list shows that she has had an active life since retiring, and that she simply doesn't want to work anymore. The ALJ also noted that Blaylock did not voluntarily submit records from her plastic surgery, evidencing a further lack of candidness on her part.

Blaylock's attempts to minimize the significance of these facts are unavailing. She argues her alleged October, 1999, onset date was not dishonest because that month she was referred to a pain management clinic. This statement does not rebut the ALJ's finding that she continued to work after alleging she was disabled. Oddly, she also contends that no effort is required to obtain a dark sun tan, and that riding a bicycle is not necessarily inconsistent with severe back pain, "depending on the type of bicycle." These theoretical arguments have no bearing on the ALJ's finding that Blaylock's daily activity picture is inconsistent with her alleged limitations. Blaylock also contends the ALJ was wrong to use the Red Cross volunteering against her because she didn't ask Blaylock how many hours per week she worked there, or consider that she had to quit because of a panic attack related to a change in her medication. Once again, Blaylock's conjectures fail to rebut the ALJ's finding that this volunteer work was one of many of Blaylock's daily activities evidencing far greater functional abilities than she alleged in her DIB application. Finally, according to Blaylock, the objective medical evidence *does* support a finding that she has a disabling back condition. I need not address this argument since I find that the evidence supports the Commissioner's determination that the evidence *does not* support such a conclusion.

I will not substitute my judgment for that of the Commissioner, where her finding is supported by substantial evidence. See Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

In sum, I find the ALJ provided clear and convincing reasons to discredit Blaylock's subjective complaints, and this analysis should be affirmed.

## II. The ALJ provided legally sufficient reasons to discredit the medical opinion of Heather Burgin, M.D.

Blaylock alleges the ALJ failed to give clear and convincing reasons for rejecting the opinion of Dr. Burgin, who opined on December 12, 2001, that Blaylock would not be able to sustain work activity eight hours a day, five days a week, without missing more than two days of work per month, due to her "chronic lumbosacral back pain."

The relative weight afforded the opinion of a physician depends upon his or her opportunity to observe and to get to know the patient as an individual. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must provide "clear and convincing reasons," supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician when it is not contradicted by another doctor, and "specific and legitimate" reasons when it is. See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600-601 (9th Cir. 1999).

In the instant case, the ALJ needed to provide only specific and legitimate reasons to discredit Dr. Burgin's opinion because it was contradicted by other medical sources. The ALJ gave three reasons for doing so. First, the ALJ determined that Dr. Burgin's opinion was contradicted by Dr. Buze, who signed a work release for Blaylock in February, 2001, recommending a modified range of light work with the option to alternate positions. Second, she stated that Dr. Burgin's opinion was solicited by Blaylock in support of her DIB claim. Third,

she found the opinion was not based on, or supported by, objective medical evidence, but was instead based on Blaylock's discredited self-reports. In the three years that Dr. Burgin had been treating Blaylock, no objective neurologic signs were assessed, and Dr. Burgin never performed a physical capacity evaluation on Blaylock.

Blaylock argues Dr. Buza's work release does not contradict Dr. Burgin's opinion because Dr. Buza didn't say whether he thought Blaylock could sustain full-time work. While I agree that Dr. Buza's work release is not accompanied by a functional capacities assessment, it was reasonable for the ALJ to conclude that Dr. Buza's opinion that Blaylock can work contradicts Dr. Burgin's opinion that she cannot. The ALJ's apparent confusion over the confirmation letter sent to Dr. Buza in July, 2001, by Linda Jensen, M.D., from Disability Determination Services, does not diminish the significance of Dr. Buza's February, 2001, opinion.

Blaylock also contends that the ALJ was wrong to discredit Dr. Burgin's opinion, in part because Blaylock herself solicited it. While a claimant's solicitation of medical evidence to support her claim, by itself, should not count against her, in the context in which this factor was considered here, I find no error. The ALJ wrote:

> Upon reading, both of these letters were solicited to support disability. No actual objective limitations are identified. When read carefully, the basis of these opinions is the claimant's self-reports of pain. On examinations by Dr. Burgin spanning three years the claimant had no objective neurologic signs. Nor did the claimant undergo a physical capacity evaluation as to work. The claimant repeatedly denied neurologic involvement, as Dr. Burgin acknowledged.

The ALJ properly considered the fact that Blaylock solicited this opinion from Dr. Burgin, together with the fact that is was not based on objective medical evidence, or on a proper functional capacity assessment, to conclude that Dr. Burgin simply endorsed Blaylock's disability claim without question. I find this reasoning convincing, and based on substantial evidence.

Page -10- FINDINGS AND RECOMMENDATION

Blaylock's contention that Dr. Burgin's opinion *was* supported by objective neurologic signs is similarly unavailing. Though Dr. Buza did assess continuing neurologic signs in January, 2001, there is no indication that Dr. Burgin's opinion was based on these findings, or that these signs were still present at the time Dr. Burgin authored her opinions. Thus, it was reasonable for the ALJ to conclude that Dr. Burgin's opinion was not based on objective medical evidence.

Accordingly, I find the ALJ's rejection of Dr. Burgin's opinion was reasonable, and should be affirmed, in light of the substantial evidence suggesting it was not reliable.

### III. The ALJ's step two finding was supported by substantial evidence.

Blaylock contends the ALJ erred at step two of the sequential evaluation by failing to find her alleged mental impairment was severe. In order to progress beyond step two of the five-step sequential evaluation, a disability claimant must prove (a) that she has a "medically determinable physical or mental impairment," and (b) that it is severe, within the meaning of the Act. See 20 C.F.R. §§404.1504, 416.920©); see also Edlund, 253 F.3d at 1159-60.

To show a "medically determinable physical or mental impairment" the claimant must proffer medical evidence from "acceptable medical sources" listed in 20 C.F.R. § 404.1513. This evidence should include: (1) medical history; (2) clinical findings; (3) laboratory findings; (4) diagnosis; (5) treatment prescribed, and the claimant's response, and prognosis; and (6) a statement about what the claimant can still do despite his impairment(s) "based on the acceptable medical source's findings." See 20 C.F.R. §§ 416.908, 416.912.

To show an impairment is "severe," the medical evidence must establish that it significantly limits his ability to do basic work activities, such as: walking, standing, sitting,

lifting, pushing, pulling, reaching, carrying, handling, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to supervisors, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921. An impairment is not severe if it has no more than a minimal effect on the claimant's ability to do these types of activities. See SSR 96-3p.

Here, the ALJ found Blaylock's alleged mental impairment was not severe because the evidence did not support a finding that it imposed more than a minimal limitation on her ability to do basic work activities. The ALJ noted that medical evidence indicated Blaylock had experienced situational depression and brief periods of anxiety. However, Blaylock responded well to medication and brief episodes of counseling.

Blaylock contends her alleged mental impairment *does* impose more than a minimal limitation on her work ability to do basic work activities. She points to an August 20, 1997, chart note written by Jacqueline Logan, M.D., as evidence that she has a "long history of mental illness." Yet this note simply memorializes Blaylock's subjective report. Blaylock also points to her own discredited testimony that depression is her worst problem, and that it can last for weeks at a time and cause her to isolate inside her home. However, even if Blaylock's testimony were credible, it cannot serve as a substitute for medical evidence of sever mental impairment.

Blaylock also contends that Dr. Burgin "advised her to stop working because of her depression." She omits to mention that the day Dr. Burgin wrote that note, Blaylock complained that she was "very unhappy at her current job," and that she felt "prosecuted" there. She "requested a note for her employer to excuse her from work for reasons of deteriorating mental health." Dr. Burgin obliged her, noting, "The patient plans to leave work at this institution and

potentially seek employment elsewhere. She has filed her paperwork and will be leaving as of the 30th of November." Thus, Dr. Burgin's note does not count as an objective medical assessment, or a finding that Blaylock's ability to do basic work activities was compromised as a result of mental illness. It serves only as further evidence that Dr. Burgin was sympathetic to Blaylock's work situation.

Further, Blaylock contends she was "diagnosed with bipolar disorder and anxiety disorder in April, 2002" and with "Obsessive Compulsive Disorder and Panic Disorder" a year later. Her evidence consists of chart notes made by a nurse practitioner named Sarah DuVal, who periodically counseled Blaylock in 2002 and 2003. In the nurse's shorthand, under her "assessment and plan" in the 2002 note she lists Bipolor Disorder, not otherwise specified, and Anxiety Disorder with Obsessive Compulsive traits. Her 2003 note also lists Obsessive Compulsive Disorder and Panic Disorder. However, these notes do not constitute acceptable medical diagnosis because a nurse practitioner is not an "acceptable medical source" under the regulations, nor is an assessment the equivalent of a diagnosis. Further, merely being diagnosed with an impairment does not mean that the impairment significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1521(a).

Finally, Blaylock alleges that the ALJ failed "to develop the record regarding the extent of Blaylock's mental limitations" and that a consultative examination should have been ordered "to fully explore the extent of this problem." Blaylock misconceives of the Commissioner's duty in this respect. The regulations plainly state that the burden of proving disability is on the claimant. 20 C.F.R. § 404.1512. The ALJ "will make an initial request for evidence from [the claimant's] medical source" and if the medical source has not responded within 20 days of the request, "will

make one followup request to obtain the medical evidence necessary to make a determination." 20 C.F.R. § 404.1512(d). If the evidence provided by the medical source "contains a conflict or ambiguity" that cannot be resolved by other evidence in the record, then the ALJ will re-contact the medical source for clarification. Id. at 404.1512(e); see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). If the medical source does not provide clarification, then the ALJ has the option of ordering a consultative evaluation to resolve the conflict or ambiguity. Id. at 404.1512(f).

Here, there was no conflict or ambiguity in acceptable medical source records regarding Blaylock's alleged mental impairment, so it was not necessary for the ALJ to re-contact these sources, or to order a consultative examination.

For all of these reasons I find the ALJ reasonably determined that Blaylock did not suffer from a severe mental impairment, and this finding should be affirmed.

## IV. The ALJ's RFC assessment and step five finding were supported by substantial evidence.

Blaylock alleges the ALJ erred at step five of the sequential evaluation by not applying the Medical-Vocational Guidelines (the guidelines) at 20 C.F.R. § 404, Subpt. P, App. 2, to find her disabled, per Rule 201.06, or Rule 201.14. These guidelines direct a finding of disability where the claimant's "[m]aximum sustained work capacity is limited to sedentary work as a result of severe medically determinable impairment(s)," and the claimant is "approaching advanced age" or of "advanced age" with no transferable work skills. Id. Though the ALJ found that Blaylock retained the RFC for light work, Blaylock contends she is limited to sedentary work. Thus, although she does not expressly assert that the ALJ's RFC assessment was flawed, she does so implicitly.

The RFC assessment measures what an individual can do despite her limitations. SSR 96-8p. The ALJ must consider the whole record, and reconcile inconsistencies between medical and testimonial evidence in order to arrive at a claimant's RFC. See SSR 96-5p. As discussed, above, the ALJ thoroughly assessed the medical and testimonial evidence in the case, and determined that despite Blaylock's severe low back condition, she remained capable of performing light work, limited only by the need to alternate between sitting and standing positions.

Blaylock contends the following evidence establishes that she is limited to sedentary work: (1) her own contention that she has difficulty walking; (2) Dr. Anderson's observation that she appeared uncomfortable when moving; (3) Dr. Buza's notation that she has weakness in her left quadricep, especially upon extension of her knee or rising from a squatting position; and, (4) Dr. Burgin's notation that Blaylock's pain was worse with prolonged sitting, standing, or other activity.

As discussed above, the ALJ found Blaylock's self-reports to be unreliable. Physician's notes and opinions based solely on Blaylock's self-reports are similarly unreliable. The ALJ did not credit Blaylock's alleged walking limitation because it was not supported by objective medical evidence, and because it was refuted by Blaylock's activities of daily living. Thus, she properly omitted to include any limitations related to this unsupported allegation in her assessment of Blaylock's RFC.

At step five of the sequential evaluation, the Commissioner must show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d at 1043. The Commissioner can satisfy this burden either by applying the guidelines at 20 C.F.R. § 404,

Subpt. P, App. 2, or by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. Id. If a claimant has functional limitations or work restrictions which prevent her from performing the full range of work at a given exertional level, the guidelines cannot be used at step five to determine whether she is disabled. Instead, the ALJ must elicit testimony from a VE to determine whether jobs exist in the national economy that the claimant can perform despite her limitations and restrictions. Tacket v. Apfel, 180 F.3d 1094, 1103-04 (9th Cir. 1999).

Here, the ALJ elicited the expert opinion of a VE, who testified that a hypothetical person with Blaylock's education, work history, age, and RFC could perform the jobs of gate tender and in-home personal attendant- jobs that exist in significant numbers in the national economy. Since the ALJ's hypothetical question was based upon substantial evidence, she properly relied on the VE's testimony to conclude that Blaylock was not disabled. This finding should be affirmed.

## RECOMMENDATION

Based on the foregoing, the Commissioner's final decision should be AFFIRMED, and a final judgement should ultimately be entered DISMISSING this case with prejudice.

DATED this 23 day of NOV, 2005.

Thomas M. Coffin
United States Magistrate Judge